Let's take up Stanford v. City of Flora and Flora Chamber of Commerce. Justice Cates is unable to continue on with us this morning for oral argument. She will remain a member of the panel, will listen to the audio recording that's being made, but will not be physically present here with us for the rest of the day. So, please proceed. Thank you. May it please the Court and your Honors Council. My name is Linda Cantrell. I represent the Plaintiff Appellant in this case. I would like to start out with the issue of whether the defendant is entitled to a set-off against the jury award for underinsured motorist coverage that was paid by Plaintiff's automobile insurance policy. I believe this is a straightforward and simple question with a straightforward answer because the collateral source rule has been before this Court on many situations in the application of the rule. But what makes this case different is we're dealing with underinsured coverage. Now, the Supreme Court has decided previously that private health insurance payments, Blue Cross Blue Shield, is not a set-off against a jury award because of the collateral source rule. It has decided as well that Medicare-Medicaid payments, those collateral payments, are not a set-off. This Court has decided that medical payments made under an automobile insurance policy are not a set-off. And as well, we have a decision where uninsured motorist coverage was found not to be a set-off against a jury award. So what is the difference for underinsured coverage? There isn't any. We have a straightforward collateral source rule application to all these benefits, whether they're medical payments, whether they're uninsured benefits, or underinsured benefits. We believe that application is the same, and there's no set-off against the jury award in this case. The collateral source rule holds. A wrongdoer is not to benefit from expenditures that are made by the injured party or take advantage of any contracts that that injured party has with third parties. The Illinois Supreme Court, the Seminole case, is Willis v. Foster. That was decided in 2008. It clarified the application of the collateral source rule that Arthur v. Couture, the Supreme Court applied in Arthur v. Couture in 2005. In Arthur v. Couture, the plaintiff was injured, sued a landlord and auctioneer for injuries she sustained when she stepped in a hole on the premises. The plaintiff made a claim for all of her medical bills, despite that many of them had been paid by Blue Cross Blue Shield. The Supreme Court stated, you can submit the entire amount of the bills in evidence, not just the amount that Blue Cross Blue Shield paid. Why? It's because of the collateral source rule. Benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor should not be used to reduce the amount of liability that the tortfeasor should have to pay. The Supreme Court in Arthur held, it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. So the Supreme Court, and again, which was affirmed in Willis v. Foster three years later, has considered, is there a double recovery? Is there a windfall? And as I'll speak on Willis in just a minute, the court has considered a double recovery. But the Arthur court, although it's dealing with medical payments, stated insurance proceeds do not decrease the defendant's liability where the defendant did not contribute to the payment of those premiums. So it is the plaintiff that benefited, bargained for this benefit by paying his premiums. And the court's considered, even in uninsured coverage, it is that double recovery that the plaintiff benefited for. And if there's going to be a windfall, it should not go to the defendant that didn't pay any of those premiums. It's the same case here with the defendant, Flora Chamber of Commerce. Flora Chamber of Commerce didn't pay State Farm, the underinsured carrier, for decades, premiums to have that insurance. The plaintiff did. And the Supreme Court has considered that double recovery or that windfall situation. Now, in Willis v. Foster, the Supreme Court did clarify the application of the flatter source rule, because in Arthur, it dealt with Blue Cross Blue Shield, private health care insurance. In Willis, it dealt with Medicare and Medicaid. But the Supreme Court upheld the application or Arthur's reasoning and justification for applying the flatter source rule is that the wrongdoer should not benefit, again, from the expenditures made by the insured party. Arthur and Willis, the Supreme Court in either case, did not limit. It just said insurance. It didn't limit to what type of insurance. Is it Medicare, uninsured, underinsured? It just says other insurance. Now, the case of Halverson, which was the 5th District case decided by this Court in 2002, gets more into the insurance policies. Halverson, the 5th District, stated there is no set-off for MedPay, proceeds that are paid under an injured party's MedPay automobile insurance. Payment, the Court said, is from a collateral source. It is wholly independent from the tort fees. And again, it goes into, it was the benefit of the bargain. The plaintiff paid the premiums. That's why the policy exists. That's why the insurance proceeds were paid out. It has nothing to do with the tort fees. But the 5th District also held that even though not allowing the set-off would result in a double recovery, it's appropriate in this situation because the plaintiff bargained for that double recovery. Another case that plaintiffs and defendants kind of argue over is the Beard case. And you can see from the briefs, does the Beard v. Brown case apply? It was decided in 1978, but prior to the Joint Tort Fees and Contribution Act, which is why the defendant says this case does not apply. It also deals with the Dram Shop Act, which is statutory, not based on tort principles. But this is the only case we found that we're getting more into the uninsured and underinsured insurance to find out if there's a set-off. If you look at Beard v. Brown, it applies in this case because the reasoning that the court said uninsured coverage under a motorist policy is not a set-off against jury award is because of the collateral source rule. It has nothing to do with the Joint Tort Fees and Contribution Act. In fact, this case doesn't fall under that. State Farm is not a tort feeser. And I can get into that if there's some questions from the bench about why the Joint Tort Fees and Contribution Act does not apply. But the court stated it's all about the, and we're going to follow the Supreme Court, we're going to follow all the other cases, and this is 40 years ago the Beard case was decided in 1978, that uninsured insurance is not a set-off. So what is the difference of underinsured coverage? There isn't a difference. The court in Beard stated where an injured party seeks recovery from his insurer, just says insurer, it doesn't say medical insurer, underinsurer, just the insurer, such recovery is based on contract law and would only be made possible because the injured party contracted for that recovery. It said, on the other hand, if a recovery was against the uninsured motorist, that would be based on tort law. So similar to this case, we, the plaintiff received the underinsured motorist coverage from his State Farm policy. That is based on contract law. This is not from the uninsured motorist. This is not from the tort fees. So being consistent with Beard v. Brown from 1978, it is all about the collateral source rule. It's a payment from someone independent, wholly not connected to the tort fees. It has nothing to do with the tort fees. One of the issues that the defendant brought up is subrogation. Because State Farm waived its subrogation rights in this case, they bring up an issue that State Farm is a surrogate relationship. It's State Farm's stance misuse of the tort fees. And Beard, 40 years ago, directly addressed this issue, and I'll talk about Will's addressing this issue further. Beard court went on to state, nor are we concerned with the uninsured carrier may have waived their right to subrogation. It's logical to infer that the insured gave consideration for that waiver. As long as the tort feeser doesn't have to be exposed to a second recovery from that collateral source, it doesn't matter how the proceeds are divided. So the Beard court 40 years ago, Beard case 40 years ago, said we don't have to concern ourselves about subrogation. And that was reaffirmed when Will's came about in 2008. The Supreme Court said we don't concern ourselves with subrogation because typically the subrogation, there's a subrogation claim filed. There's a lien. Sometimes it's waived, but typically there's a lien. So the plaintiff has to pay that lien back or satisfy that subrogation claim. Well, typically means not always. You know, sometimes that is going to be waived, the subrogation claim. But the Supreme Court is not going to concern itself with those. Sometimes the subrogation claim is going to be waived. So the court doesn't look at that. It doesn't look at that surrogate relationship or that do you stand in the shoes of the tort feeser because it is a straight application of the collateral source rule. And if we are going to affirm the trial court, we're basically circumventing the whole purpose of the collateral source rule, that it doesn't apply. The Supreme Court has never made that distinction. In fact, Will's and Arthur, the Supreme Court in both of those cases, rely on the restatement second of torts. And the restatement second of torts basically says, and this is section 920A2 cited in our brief, payment made to or benefits conferred on the insured party from other sources, just says other sources, are not credited against the tort feeser's liability, although they cover all or part of the harm for which the tort feeser is liable. So to go to the comments of other sources, the comment says, what are our sources? It lists various types of collateral benefits that are covered by the rule. Number one is insurance policies. It goes on to say employment benefits for two reasons, but insurance policies. So the Supreme Court is following the restatement second of torts. Applying the collateral source rule and other sources means insurance policies. And I think that's why the Supreme Court perhaps hasn't made a distinction between is it Medicare, Medicaid, and private insurance and so forth, uninsured. But we do have one case, the uninsured coverage, and that's the Beard case. And it didn't rely on this joint tort feeser act, because in this case, State Farm is not a joint tort feeser. And by definition, it's not a joint tort feeser. So the plaintiff asks that this court reverse the trial court's order granting the motion for setoff. And to briefly address the damages portion, the jury awarded $25,000 in lost wages and $25,000 in pain and suffering. They awarded zero in medical expenses, zero in disability, and zero for home remodeling. This verdict, based on the Supreme Court decisions, is entirely inconsistent with the evidence. It's uncontroverted. And there's no rational relationship between the evidence that was put in and the jury award. The evidence that went in, the plaintiff was injured. Well, the jury found the Chamber of Commerce negligent, that they were 90% because 10% contributory negligence, 90% at fault for these injuries. The injuries were immediate. He was taken by ambulance to the hospital, life-flighted out of there, flung to another hospital, spent several days in the hospital. None of this was contested. His doctor testified that, yes, these injuries were caused because of the accident. So to award zero in medical expenses when none of these, he testified that this is the injuries he sustained, this is what he went through, this is, to award zero in medical expenses is inconsistent with the evidence. Did the defendant put on any evidence regarding the medicals or causation as far as experts? No. The defendant did not have any experts and did a cross-examination of the plaintiff's treating doctor, which went more to whether his later surgery for his knee surgery was related. They really didn't ask him anything about his immediate injuries from the accident, the crushing injury to his leg, all those surgeries from that accident at the scene that happened. Didn't really cross-examine the plaintiff's doctor about those because it was never really disputed that it was caused because of the accident. You know, the guy hit the back of the parade, it knocked the tractor, 10,000-pound tractor, on his leg. So there really wasn't a dispute that, yes, that was the injury and surgeries resulting from that accident. So the only really cross-examination was cursory of the plaintiff's physician, and that was, was this knee replacement that he had related, or the knee surgery that he had, was it related? For the juror to award pain and suffering with no medical expenses is, there's no rational relationship to it. And the plaintiff also put on testimony of his lost wages. And for the jury to award $25,000 in lost wages, which is less than one year of his income, is, it's like they pulled it out of thin air. There's no basis at all as to how they could have calculated it. It doesn't represent a specific number of months, years. And there's, the evidence was clear that he couldn't return to work for at least a year and a half after the accident, and never did, was never able to return to work as a truck driver, doing the type of truck driving he did. So not even to award that year and a half while he was being treated is, is a law enough to set aside the jury award because there's no rational relationship between the evidence or the, and I think we follow the Dixon Court, the Dixon, the Supreme Court in Dixon is what we cite in our brief 2008 case. A verdict for pain and suffering, an economic loss, but zero for disability, is grounds for a new trial on damages. Because it shows the jury disregarded a proven element of the damages. So we ask that this court either, because we have some damages, we have the lost wages, medical expenses, home repair, those all can be calculated. So we ask that either this court remand this case for a trial on damages only, or apply agitator to the damages that can be calculated, which are lost wages, medical expenses, and home repair, and remand this case only on pain and suffering and disability. Thank you. Thank you, counsel. Argument for the affiliate. Thank you. Good morning, your honor. Good morning. May it please the court. My name is Eric St. Leger, and I'm before you on behalf of the defendant affiliate in this case for a chamber of commerce. As plaintiff's counsel stated previously, there are two main issues in this case. We have set off regarding underinsured motorist payments, but we also have the plaintiff's claim that the jury's award is against the manifest way of the evidence. I would like to hit on that point first, if it's okay, and then I'll come back to the set off issue. The issue on the jury's award of damages is mostly factual, so let's start with some key facts. The trial lasted a week. It was a jury trial, and late on Friday afternoon, the jury presented a small piece of paper that had two questions on it. And those questions were, can the jury adjust the money amounts being asked up or down, and can the jury award zero dollars on some categories being asked and change the amounts on others? Those were the questions verbatim that the jury sent out. Of course, after that, there was discussion of what the answer should be, should there be further instruction on that issue, or how should it be handled? And after quite a bit of discussion and thought from both Judge Todd, the presiding judge of the trial, and counsel, there was an agreement between everybody involved to answer those questions yes and yes. So yes to both individual questions, and then there was a reference made to one of the damage instructions that had already been provided to the jury. Now, as this Court, I'm sure, is aware, to waive something is typically thought of as an intentional relinquishment of a known right. And waiver is exactly what we have here as it regards specifically jury instructions. If there is an instruction given to the jury and there is no alternate instruction offered by counsel or an objection to that instruction, then review of that issue is waived on appeal. And that's exactly what happened here. There was an agreement. Waiver obviously can be expressed. We all know what that is. It can also be silenced. You can waive something by silence or an omission of action, that sort of thing. But this is the clearest kind of waiver, an express waiver. There is an agreement between all the parties involved, and this is clear on the record in the transcript from that fifth day of trial, to answer the questions yes and yes. So effectively, one of the answers to those questions was, can the jury award $0 on some categories of damages being asked? Yes. There was an agreement to tell the jury that. And now that is exactly what plaintiff contends was erred on the part of the jury, is to award $0 on some categories of damages. It's clear that there was an express waiver because of that answer. There was no objection. There was no alternative instruction. Nobody argued or suggested. That was an agreement between everyone. That's what went to the jury, and the jury did what they were told that they could do by the instruction. Even if this court does not see fit to find that a waiver occurred, which we believe did occur, there was a lack of proof during the trial of damages across the board by the plaintiff in this case. And that's why we believe, as Judge Todd found at the trial court level, that the damage awards by the jury were reasonable and should not be altered, should not be sent back for a new trial on damages only. The first subcategory of damages was medical expenses. And there were medical bills, a stack of them, admitted into evidence. But simply admitting them into evidence does not mean that the jury is forced to award any of them. They can award some of them. They can choose not to award any, but the proof was not there. And in this case, the proof was not there. The only medical testimony in this case was very brief, and it was by the plaintiff himself. There was a physician referenced by the plaintiff in the argument before you today. That physician was Dr. Gray, and he first saw the plaintiff approximately two and a half years after the occurrence that we're here about. And there was complaints about knee pain. And it turned out that there was an injury to the meniscus found, and there was arthroscopic surgery done to help remedy that situation. Now, Dr. Gray did not provide any care at all to the plaintiff in that two and a half years following the occurrence. He didn't see him about any of his complaints back then, didn't treat him for any of that. He also offered no opinion. The plaintiff's counsel stated in an argument that there was a physician that testified as to causation of these injuries. I urge you to review the testimony by evidence deposition read in a trial of Dr. Gray. I urge you to see exactly what Dr. Gray said and what he didn't say because he did not make a causal connection between any of the injuries that plaintiff allegedly suffered to the occurrence. Not before he saw him, and he specifically said that he could not, within a reasonable degree of medical certainty, make a causal connection between the knee injury that he actually treated plaintiff for and the occurrence. He said it could have been because of father time, so aging, arthritis, that sort of thing. It could have been because it's in the record that the plaintiff had had a partial right foot amputation earlier in life, which caused an altered gait, or it's possible that it could have been related to the accident. But that's as far as he would go. He refused to go any further, so there's no connection made there. There was no other medical testimony at trial, period. No other physicians testified. No one in the medical field. It was plaintiff's testimony only, and it was very brief. Plaintiff was handed the stack of bills when he was on the stand in front of the jury, and the question was something to the effect of, are these bills related to the occurrence? Yes, and then they moved on. That was it. The second subcategory is disability. Again, there was no medical testimony about disability suffered by the plaintiff shortly after the accident, in the long term, any of it. None was presented. It was only the plaintiff discussing it himself. And as we know, in a personal injury cause of action, the plaintiff is as interested a party as you can find. They have direct interest in the result of the litigation, and through that, they can easily have bias that can be judged by the jury. The jury, as we all know, is the judge of the credibility of the witnesses. They find some credible. They find some not to be credible, and that's within the jury function. There was no physician that testified as to disability. And there was also contradictory testimony by friends of the plaintiff on whether he was disabled at the time of trial or leading up to the time of trial at all or not. The plaintiff claimed that he could climb on trailers and scrap down loads. That was part of his reason why he said he couldn't work anymore. But a friend of his, Donald Delaney, came in there and said, he goes to antique tractor shows. We still go to them all the time. We go to the same ones. He still loads his own tractor, still unloads his own tractor, straps it down, and can do all of that. So there's some contradictory testimony there on what level of disability there was if there was any. And when the sole testimony on issues of damages are coming from the plaintiff himself, the jury is not required to believe the plaintiff. There doesn't have to be contradictory testimony to every element for the jury not to believe what the plaintiff has to say. The other category is remodeling expenses. No one who did any remodeling came to testify. There's no medical testimony that any remodeling at the plaintiff's house or in or around his house was necessary. No one else testified to that except very briefly the plaintiff talked about changes he had made to the house. As Plaintiff's Counsel stated, there was $25,000 each awarded by the jury to the plaintiff for pain and suffering and lost earnings. Pain and suffering itself is a subjective element. The jury heard all the evidence, and that's what they saw fit to award in that category for lost earnings. There was no testimony from an employee, none at all. The only testimony on lost earnings came from the plaintiff himself, and it was brief. And the testimony was also that his wages were not all the same every year because he was paid by the load. He was an over-the-road trucker. So to say that he should have gotten an exact amount for one year of work or a certain number of months of work, it varied, and he testified. For those reasons, we believe that, first of all, that the review of this specific issue on appeal has been waived, and it's been waived in an express manner by the jury instructions that were agreed to by everyone, which stated that the jury could do exactly what they did in this case, award zero damages in some categories and alter the amount of damages asked for by the plaintiff in other categories. That's exactly what they did, and that's exactly what they were told that they could do. Moving on to the second main issue, which was discussed at length by plaintiff's counsel before you earlier. It's set off of underinsured motorist coverage. Plaintiff's counsel spoke at length about the cases that discuss the collateral source rule in the state of Illinois, the Arthur case, the Wills case. Some of you may be familiar with those prior to coming in here today. And specifically, the Arthur and Wills case are distinguishable from the situation in this case because you're talking about health insurance payments. The Arthur case, it was private health insurance. I think it was Blue Cross. And then in the Wills case, it was more public health insurance, Medicare, Medicaid, that sort of thing. And the courts – the questions before the courts in those cases were, well, what goes before the jury? The amount of money that was paid, ultimately paid after deductions and everything by the insurance company or the gross amount of the bills before recovery. That's not what we're here about in this case at all. And the main difference between those benefits and the benefits for underinsured motorist coverage are the nature of the benefits themselves. Health insurance payments are made solely based on the contract. There's no element of tort, anything. There's no element of fault. If you cause an accident and you're injured and you have health insurance, your health insurance is going to pay for the rest of the contract. If someone else crosses the center line and hits you, then the health insurance is still going to pay. It doesn't matter who was at fault. That has no bearing on it at all. Purely contractual. Same thing for medical payments coverage under an auto policy like was referenced in the Halverson case. Under medical payments, it doesn't matter who's at fault. If you have medical payments coverage and it's covered under your auto policy, the accident that occurred, then they will pay you those benefits. That's purely contractual. In this case, there is a tort element. There's tort principles that play a major role in underinsured motorist coverage. And because simply by being in an accident, that does not itself trigger underinsured motorist coverage. If you're the at-fault party, then you don't get underinsured benefits. There has to be an at-fault party besides the insurer that triggers the payment of those. And furthermore, the insurance company can litigate that normally through arbitration to challenge the damages being requested by the plaintiff, by the injured party in those cases. So they, in that sense, can almost step into the shoes of the tortfeasor and challenge it. They don't just iron off on the entire policy limit just because you're in an accident, just because it falls under underinsured motorist coverage. It's paid based on tort principles, based on the tort liability of an at-fault party different than the insurer. And that's the key distinction between health insurance coverage, between medical payments coverage, and the current situation. And that's what we've laid out in our brief in further detail. And that distinction is what we believe to be important and what we think should be focused on by this court and what we know is focused on by the trial court in finding that there should be set off. There was also an issue that wasn't really made clear, but there was another amount set off that's not being challenged, which came from Geico Insurance Company that you'll see in the record. And that was in the amount of $20,000. What we're focused on here, and the only thing that's challenged, is the money that was paid by State Farm under underinsured motorist coverage, which was $280,000. The Baird case was also mentioned by plaintiff's counsel. That was a 1978 case and dealt with uninsured motorist coverage as opposed to underinsured. But there's some key distinctions to hold from that case as well. First, that was a Dram Shop Act case. I think then it was called the Liquor Control Act, but I believe now it's referred to as the Dram Shop Act. The Dram Shop Act is not a compensatory sort of statute. That's not the point behind it. It is penal in nature, which means that it's to punish and police establishments that fall within the Dram Shop Act. And, you know, it can act as a punishment function for violations of the Act. Well, it has a compensatory damages element in the Dram Shop Act. There's a limitation on the amount of award, but there are elements of fault. It's a civil trial. It's not a quasi-criminal or some sort of regulatory enforcement type of hearing. It is actually a civil action with a compensatory base. That's right, Your Honor. I think it serves both functions, both partly compensatory. And then it does, the case law in Illinois does show that it has a penal function to it, where in this case we have solely compensatory damages we're dealing with. There's no claim for punitive damages or the like. And as I know this Court is aware, the general policy behind the compensatory damages is to make the plaintiff whole and compensate them for their injuries, not to punish any certain defendant and not to, you know, take part of someone's scalp for negligence that may or may not have occurred. And in this case, the plaintiff has already been made whole. If this Court saw fit to reverse the decision of the trial court on set-off, it would 100% ensure a double recovery by the plaintiff. And Illinois courts disfavor double recovery. There is a collateral source rule, which is found in certain circumstances to be an exception to the rule against double recovery. But for the reasons stated earlier, the cases on the collateral source rule are different and distinguishable from this case because this was underinsured money was paid because of the fault of the tortfeasor. The tortfeasor in focus then was Kirk Jordan, who was intoxicated and was in a van, rear-ended at the back of the plaintiff's tractor. That's where this all started. And those monies were paid to cover the gap between his insurance coverage, meaning Kirk Jordan, the initial tortfeasor there, and make the plaintiff whole. And obviously, as the jury, which heard all the evidence over a week of time in this trial, found, the plaintiff was more than compensated for the injuries he suffered by way of the money he received from Safe Farm because of the actions of the tortfeasor, Kirk Jordan. So there's only a chance of double recovery if there's no set-off in this case. It's guaranteed because there's no subrogation rights. There's no one who's looking or has any right to come back to the plaintiff and seek to receive some of that money in return to prevent double recovery. That's not an element here. So based on the arguments made here today and based on the arguments further stated in our brief, we would ask that the trial court's verdict on damages and the entry of that judgment and also the ruling in the order for set-off be affirmed by this court. I'd be happy to answer any questions, but if not, that's all I have. Thank you, counsel. Thank you. Lubow, I agree. I would clarify something the counsel suggested. There was no medical testimony from Dr. Gray. If you look at the appendix beginning at page 225, Dr. Gray was specifically asked in his evidence deposition, is it your opinion within a reasonable degree of medical and surgical certainty whether the surgeries that were performed to repair the tibia and fibula were reasonable and necessary? Yes, the fracture pattern needed to be fixed and repaired. And then he goes on to state, in my medical opinion, the injuries he sustained to his left tibia can cause him to have an abnormal gait pattern. It can also cause initial trauma to the knee. He didn't just have trauma to the shin itself, and also the injury pattern can cause an abnormal gait pattern that can cause abnormal wear and early arthritis in that joint, which is what led to the knee. Is it your opinion, Dr. Gray, based upon a reasonable degree of medical and surgical certainty that the surgeries that he performed are reasonable and necessary to his left knee? Yes, they are. So there's ample testimony from Dr. Gray that the injuries he sustained right after the accident and the knee surgery that he had was related to the injuries he sustained in the accident. I did not address in my 20 minutes the issue of waiver. The plaintiff did not waive any right that it had to a jury award that is consistent with the evidence. The jury is free, obviously, to fluctuate. The plaintiff just suggests the damages that they pray for. The jury is free to do whatever they want. They could have filed in favor of the defendant now. The plaintiff can award zero. Of course they can adjust it up or down. But the jury award cannot be inconsistent with the evidence. They can't just completely disregard a proven element of damages, and that's what they did. There's no waiver in this case. One other thing I'd like to address as far as the issue of counsel had mentioned, there really wasn't any disability or there was an argument of whether there was any disability. This gentleman, the plaintiff, was non-leg bearing after this accident for four months after the surgery. He couldn't even step on his foot until April 2012. He was still using a walker. This accident happened in a Halloween parade in October 2010. April 2012, he's still using a walker, never goes back to work, and he still has a rod in his leg. Certainly there's some disability. He may not have as much disability today that he did for the two years following the accident, but the evidence shows that there was disability, and the jury award of zero for disability is a lenient. The plaintiff has not been made open in this case. Luckily, he had a $300,000 underinsured policy because the defendant that caused the accident contributed. It was a $20,000 policy, the gentleman that rode into the back of the parade. So he was able to recover another $280,000. Initially, at the very beginning of this case, the defendant was asking for a set-off, and we agree the $20,000 from the tort fees was a set-off, but was also asking for a set-off of the $10,000 in med pay that State Farm paid the plaintiff under his med pay policy. They're no longer asking for that $10,000. They also asked for the $1,000 that the victim advocacy fund paid the plaintiff. They're not asking for that $1,000. They're only focusing on the underinsured coverage because it's a $280,000 policy. If this court said the set-off does not apply, well, actually, if it said the set-off is still in place, if the set-off applies, then we have a $50,000 jury award that's reduced by 10% contrived, so now we're down to $45,000, and there's a $20,000 set-off from GEICO with the tort fees are paid. So there's $25,000 as it would stand now without the set-off that the defendant doesn't have to pay because State Farm is going to credit their $25,000, and so they're walking away without having to pay any liability at all, and they were found 90% at fault for this accident. So we ask that the set-off be reversed and that this case be remanded for damages only. Thank you. Thank you, counsel, for your arguments. We'll take this case under advisement, issue a written ruling on it.